CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
11/5/2024
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CELANESE ACETATE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00201 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MID-ATLANTIC REGIONAL JOINT BOARD, LOCAL 2024 & MID-ATLANTIC REGIONAL JOINT BOARD, LOCAL 1995, | ) ) ) ) ) | By:   Hon. Thomas T. Cullen
       United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Celanese Acetate, LLC ("Celanese") brought this action against Mid-Atlantic Regional Joint Board, Local 2024 ("Local 2024") and Mid-Atlantic Regional Joint Board, Local 1995 ("Local 1995") (collectively "the Unions") asking this court to vacate an arbitration award issued in favor of the Unions.

This case is before the court on the parties' cross-motions for summary judgment. (ECF Nos. 10, 18.) The motions have been fully briefed by the parties and are ripe for disposition.[1] For the reasons discussed below, the court will deny Celanese's motion for summary judgment and grant the Unions' motion for summary judgment.

### I.   STATEMENT OF FACTS

The following facts are undisputed. (*See* Pl.'s Mem. Supp. Summ. J. [hereinafter "Pl."] at 3–11 [ECF No. 19]; Defs.' Br. Opp'n Summ. J. [hereinafter "Defs."] at 7–11 [ECF No. 27].)

---

[1] Because oral argument would not aid the court in deciding the discrete issues before it, the court dispenses with it.

Celanese operates a large cellulose manufacturing facility in Narrows, Virginia. (Pl. at 3; Defs. at 7.) The Unions collectively represent about 450 employees working at that manufacturing plant. (Pl. at 3–4; Defs. at 7.) Celanese and the Unions have been parties to a series of collective bargaining agreements ("CBAs") that set forth the terms and conditions of employment at the plant for the Unions' members. (Pl. at 3; Defs. at 7.) The current CBAs between Celanese and each Union run from April 12, 2020, to April 13, 2025. (Pl. at 4; Defs. at 7.)

The CBAs both include a "me-too" provision, which stipulates that the unionized employees will be given the same benefits and will be subject to the same terms and conditions under the Celanese health-care plan as non-unionized employees. (Pl. Ex. 1 [hereinafter "CBA"] at 27 [ECF No. 19-1].) That provision, Article 22(E) of the CBAs, further states that the terms and conditions of the health-care plan "are covered in Celanese benefit materials, including the summary plan description, available to each eligible full-time employee." (*Id.*) The Summary Plan Description ("SPD") of the health-care plan includes a provision that Celanese "reserves the right, in its sole discretion, to modify, change, revise, amend or terminate the [health-care] Plan at any time, for any reason, and without prior notice subject to any collective bargaining agreements between the Employer and various unions . . . ." (Pl. Ex. 8 [hereinafter "SPD"] at 1 [ECF No. 19-8].)

Throughout the COVID-19 pandemic, Celanese and the Unions had regular discussions about changes in protocols and policies relating to the pandemic. (Pl. at 8; Defs. at 9.) To manage healthcare costs, Celanese implemented a $60 per pay period surcharge, effective February 1, 2022, for unvaccinated employees participating in the health-care plan. (Pl. at 8; Defs. at 9.) Although the parties dispute when Celanese decided to implement the

surcharge, it is undisputed that Celanese distributed benefits materials about the surcharge to its employees in December 2021, or shortly after the open enrollment period for that year had closed. (Pl. at 9; Defs. at 9.) The surcharge remained in place until July 1, 2022, when Celanese rescinded it. (Pl. at 9; Defs. at 9.)

The Unions subsequently filed grievances concerning the implementation of the surcharge. (Pl. at 9–10; Defs. at 9.) They contended that Celanese had breached the CBAs by unilaterally implementing the surcharge without first engaging in bargaining or negotiations. (Pl. at 9–10; Defs. at 9.) Celanese denied both Unions' grievances, and arbitration ensued. (Pl. at 10; Defs. at 9.)

On October 25, 2024, Arbitrator Samuel Spencer Stone issued a decision in the case. (*See generally* Compl., Ex. 6 [hereinafter "Stone Op."] [ECF No. 1-6].) He concluded that the surcharge had been improperly instituted in violation of Article 22 of the CBAs. (*Id.* at 20–21.) He determined that, under Article 22, the terms and conditions of the health-care plan had to be provided to employees in the Celanese benefit materials. (*Id.* at 20.) Those benefit materials were distributed to employees during open enrollment. (*Id.*) He reasoned that a surcharge was a condition of importance to employees who were deciding whether to participate in the Plan. (*Id.* at 20–21.) As such, he concluded that Article 22 required that the surcharge be included in the benefit materials. (*Id.* at 21.) Because the information about the surcharge had not been made available to employees in the benefit materials during open enrollment, he sustained the grievances, ordered Celanese "to make the grievants whole," and "retain[ed] jurisdiction as to the remedy." (*Id.*)

On January 20, 2023, Celanese first filed suit in this court seeking to vacate the arbitration award. *See Celanese Acetate LLC v. Mid-Atlantic Regional Joint Board, Local 2024*, Case No. 7:23-cv-00044 (W.D. Va. Jan. 20, 2023) ("*Celanese I*"). But this court dismissed that suit as premature "because the arbitrator ha[d] not completed his work and expressly retained jurisdiction to award a remedy." (*Celanese I*, Order at 1, June 22, 2023 [ECF No. 17].) Arbitrator Stone issued a supplemental decision awarding damages and finalizing the award on December 20, 2023. (Compl., Ex. 7 [ECF No. 1-7].) Celanese then filed the instant suit, again seeking to vacate the arbitration award.

The Unions moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Defs.' Mot. Dismiss [ECF No. 10].) After the briefing on the motion to dismiss was complete, the court converted the parties' briefing into cross-motions for summary judgment[2] (Order at 1, Aug. 5, 2024 [ECF No. 17]), "the typical mechanism" for resolving "requests to vacate an arbitration award," *Benchmark Elecs., Inc. v. Myers*, No. GJH-19-242, 2019 WL 6528587, at *5 (D. Md. Dec. 3, 2019). The court then ordered a 30-day discovery period "[t]o the extent that any discovery is necessary." (Order at 2, Aug. 5, 2024 [ECF No. 17].) It also permitted the parties to file supplemental briefs following the limited discovery period. (*Id.* at 3.) In accordance with that Order, Celanese filed a motion for summary judgment (ECF No. 18), the Unions filed a response (ECF No. 27), and Celanese filed a reply brief (ECF No. 28).[3] The matter is now ripe for decision.

---

[2] This Opinion nonetheless cites the initial briefing as relating to "Defendant's Motion to Dismiss," both to differentiate it from the subsequent supplemental briefing and because that is the label it retains on the docket.

[3] Confusingly, Celanese's final brief is styled as a brief in opposition to the Unions' prior brief in opposition. It was also filed 14 days after the Unions' brief in opposition—the time period allotted for opposition briefs—rather than the 7 days allowed for reply briefs. *See* Order ¶ 9, Aug. 5, 2024 [ECF No. 17]; W.D. Va. Civ. R.

## II.  STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Even where, as here, the facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992). "When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

## III.  ANALYSIS

Though the parties' arguments are presented across briefing for two motions, the sole question before the court is relatively straightforward: should the arbitrator's decision be upheld or vacated?

The court's authority to vacate an arbitration decision is very limited. The scope of

---

11(c)(1). While this may be because the Unions brief in opposition was titled as both a brief in opposition to Celanese's motion for summary judgment *and* in support of the Unions' own motion for summary judgment, the Unions' motion for summary judgment is the July 11, 2024 motion that the court converted from a motion to dismiss to a motion for summary judgment. Celanese already filed a brief in opposition to that motion (ECF No. 15), meaning that the proper procedural mechanism for its final brief was a reply brief to its motion for summary judgment. Nevertheless, the Unions have not objected to this briefing, and the court has fully considered the arguments presented in Celanese's final brief, which are, in any case, largely duplicative of the already-extensive briefing the parties filed in this case.

- 5 -

judicial review of an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). When reviewing an arbitration decision, a court must "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). A court cannot second guess an arbitrator's reasoning or vacate an award because it might have reached a different conclusion; "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the court must defer to the arbitrator. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

There is little doubt that Arbitrator Stone "did his job," *Mountaineer Gas Co.*, 76 F.3d at 608, when resolving the Unions' grievances. His decision thoroughly recites the same facts detailed in the record before this court. (*See generally* Stone Op. at 1–16.) The decision also discusses a particular provision of the contract, Article 22, and explains why, in the arbitrator's view, Celanese violated that provision. (*See id.* at 20–21.) Accordingly, there can be little doubt that the arbitrator was, at the very least, "arguably construing or applying the contract." *United Paperworkers*, 484 U.S. at 38. Under this court's very limited authority to review Arbitrator Stone's decision, there is no basis for vacating the award.

Celanese puts forward several arguments as to why the arbitrator's decision is improper or incorrect. Celanese contends that the arbitrator exceeded the authority granted to him under the CBAs, "dispensed his own brand of industrial justice," and issued an award that does not

"draw its essence from the CBAs." (Pl. at 3.) Celanese makes two points in support of its argument: (1) Arbitrator Stone ignored the plain language of the CBAs; and (2) Arbitrator Stone imposed a notice requirement not contained in the CBAs. (Pl. at 13–16.) But the reasoning in Celanese's own brief shows that Arbitrator Stone plainly "did his job" and was, at minimum, "arguably construing or applying the contract." *See Mountaineer Gas Co.*, 76 F.3d at 608; *United Paperworkers*, 484 U.S. at 38.

While Celanese is correct that arbitrators cannot ignore the plain language of the contract they are applying, *see Excel Corp. v. Food & Com. Workers Int'l Union, Local 131*, 102 F.3d 1464, 1468 (8th Cir. 1996), there is *no* language—let alone any plain language—in the agreement that dictates how additional surcharges are imposed and whether those surcharges can be imposed after the open enrollment period. In an effort to read such language into the terms of the SPD, Celanese ignores the agreement's plain language. Though the SPD reserves Celanese's right to alter or modify the health-care plan, the very first page of the SPD makes that right "subject to any collective bargaining agreements." (SPD at 1.) Celanese's argument entirely ignores the "subject to" clause and does not explain why the arbitrator's decision— that Celanese's unilateral imposition of the surcharge violates Article 22 of the CBA—does not fall squarely within that "subject to" language.

Celanese's second point fares no better. Celanese argues that the arbitrator imposed an extra-contractual requirement that surcharges must be announced during open enrollment. (Pl. at 15.) Not so. Rather, Arbitrator Stone concluded that Article 22 requires all changes to the terms and conditions to be announced in the "benefit materials" provided to employees. (*See* Stone Op. at 20–21; CBA at 27.) Celanese does not dispute that point. (*See* Pl. at 15.)

Further, Celanese itself points out that the CBAs do not define "benefit materials." (*Id.*) Inexplicably, particularly given the deferential standard of review that this court must apply, Celanese then disputes the arbitrator's interpretation of that undefined term. Essentially, Celanese asks this court to vacate an arbitration award merely because it disagrees with the arbitrator's determination that "benefit materials"—an undefined term whose meaning must be determined through principles of contract interpretation before it can be applied to the facts of this case—refers only to those materials distributed during open enrollment. But the task of construing that language falls to the arbitrator alone, and this court does not second guess his interpretation. *See United Paperworkers Int'l Union*, 484 U.S. at 38.

Ultimately, what Celanese's reasoning reveals is that the relevant contractual language is *not* plain. The arbitrator was required to construe and interpret that language to determine what limitations the CBAs placed on Celanese's right to modify the health-care plan. Having determined that Article 22 was one such limitation, the arbitrator was further required to determine what information constituted "benefit materials" as that term was used in Article 22. Resolving both these questions constitutes "construing or applying the contract," *United Paperworkers*, 484 U.S. at 38, and it is not for the court to question whether the arbitrator's conclusion on those points was correct or even reasonable, *see Mountaineer Gas Co.*, 76 F.3d at 608. The court must defer to the arbitrator's decision.

If the court were resolving the Unions' grievances in the first instance, perhaps it would have reached a different conclusion than Arbitrator Stone. But this case is not before the court in the first instance or under a *de novo* standard of review—far from it. Instead, the standard of review of arbitration decisions is extremely deferential. Celanese's arguments all amount to

a request that this court apply a more stringent standard of review and scrutinize the arbitrator's decision more closely. This, the court cannot—and will not—do. Therefore, the court will uphold the arbitration award.

## IV. CONCLUSION

For the foregoing reasons, Celanese's motion for summary judgment will be denied, and the Unions' motion for summary judgment will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 5th day of November, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE